

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

| | |
|---|---|
| IN RE: | CASE NO. 3:24-bk-30045 |
| AMBER DAWN HALLIWELL, | CHAPTER 7<br>No Asset |
| Debtor. | JUDGE B. MCKAY MIGNAULT |
| AMBER DAWN HALLIWELL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and MISSOURI HIGHER EDUCATION LOAN AUTHORITY,<br><br>Defendants. | ADVERSARY PROCEEDING<br>CASE NO. 3:24-ap-03006 |

## MEMORANDUM OPINION AND ORDER

Pending is the *Motion for Summary Judgment* [dkt. 37] (the "Motion"), filed on January 7, 2026, by the United States of America, Department of Education ("DOE"). Plaintiff Amber Dawn Halliwell (the "Debtor") filed a response [dkt. 45] on January 22, 2026, and DOE filed a reply [dkt. 46] on January 29, 2026. A hearing was held on March 4, 2026, at which the Court heard argument and took the Motion under advisement. All briefing having been completed, the matter is now ripe for adjudication. For the reasons stated herein, the Court **GRANTS** the Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

The material facts in this adversary proceeding are undisputed.   The Debtor attended Strayer University ("Strayer") remotely from 2016 through 2020, where she earned a bachelor's degree in criminal justice in 2019 and a master's degree in human resources in 2020. To finance her studies at Strayer, the Debtor received twelve direct loans from DOE under the William D. Ford Federal Direct Loan Program and executed a promissory note obligating her to repay the same.

The Debtor is now 43 years old.  She currently works for the West Virginia Office of Constituent Services, earning approximately $43,000 in gross annual income.  Her current position is not within either of her chosen fields of study.  To date, she has been unable to find employment in those fields, despite applying for such positions.  The Debtor has been diagnosed with anxiety and post-traumatic stress disorder, for which she receives an ADA accommodation, and she uses hearing aids.  These conditions, however, do not prevent her from working full-time.

The Debtor's monthly net income is approximately $4,011.00, with monthly expenses of approximately $3,977.00.  The Debtor is a single mother with four children, including two teenagers and two children above the age of 18.  The two teenagers, as well as one of the adult children, live with the Debtor.

Despite completing her schooling nearly six years ago, the Debtor has not made a single payment on her student loans.  Rather, her student loans have been in deferment since her graduation in 2020.  The Debtor currently owes DOE a total of $107,228.19 on her student loans. These student loans are the largest single type of debt listed in the Debtor's schedules and make up more than 50% of her total debt.  *See* Schedules D, E, & F [dkt. 1].

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 26, 2024.  She filed this adversary proceeding on September 6, 2024, seeking to have her student loan debt discharged.[1]  DOE subsequently filed the present Motion, seeking summary judgment on the ground that the Debtor has not shown that repayment of her student loans would constitute an undue hardship under 11 U.S.C. § 523(a)(8).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, authorizes summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  A fact is material if it may affect the outcome of the case under the governing law.  *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant[.]"  *Humboldt Express, Inc. v. The Wise Co., Inc.* (*In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999).  "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact."  *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008); *see also Dewey v. Sallie Mae, Inc. (In re Dewey)*, 381 B.R. 681, 684 (Bankr. W.D. Tenn. 2008) ("Although nondischargeability cases are generally fact-intensive, this does not mean that in the face of a defendant's motion for summary judgment, the plaintiff may do nothing.  A plaintiff must come forward with proof on each of the elements of his claim.").

---

[1] In addition to DOE, the Debtor's complaint also included the Missouri Higher Education Loan Authority ("MOHELA") as a defendant.  The Debtor's causes of action against MOHELA will be addressed by separate order of the Court.

## DISCUSSION

Government-guaranteed student loan debt is ordinarily not dischargeable in bankruptcy unless the debtor and the debtor's dependents would suffer an undue hardship if repayment is required.  11 U.S.C. § 523(a)(8).  The seminal case in the Fourth Circuit interpreting § 523(a)(8) is *Educational Credit Management Corp. v. Frushour (In re Frushour)*, 433 F.3d 393 (4th Cir. 2005).  *Frushour* held that the undue hardship standard requires more than the usual hardship that accompanies bankruptcy.  *Id.* at 399.  Inability to pay one's debts, by itself, is insufficient, and repayment cannot be avoided merely because it would require some major personal and financial sacrifices.  *Id.* at 399-400.  As *Frushour* explained, this difficult burden is essential to the longevity of the student-loan program:

> It is thus understandable why Congress would exact a quid pro quo for government-guaranteed loans by using the undue hardship standard.  Debtors receive valuable benefits from congressionally authorized loans, but Congress in turn requires loan recipients to repay them in all but the most dire circumstances.  This heightened standard protects the integrity of the student-loan program and saves it from fiscal doom.  It also ensures public support for the program by preventing debtors from easily discharging their debts at the expense of the taxpayers who made possible their educations.

*Id.* (cleaned up).

Considering these factors, *Frushour* adopted the three-part test set forth by the Second Circuit, generally referred to as the *Brunner* test.  *See Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).  To receive a discharge under the *Brunner* test, a debtor must first demonstrate that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay her student loan obligation.  *Frushour*, 433 F.3d at 398.  Second, a debtor must show that some additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period of the student loans.  *Id.*  Lastly, a debtor must show that she has made

4

good faith-efforts to repay the loans. *Id.* The debtor seeking a discharge bears the burden of proving all three factors of the *Brunner* test by a preponderance of the evidence. *Id.* at 400. If one of the three requirements is not met, the bankruptcy court's inquiry must end there, with a finding of nondischargeability. *Hixson v. U.S. Dep't of Educ. (In re Hixson)*, 450 B.R. 9, 22 (Bankr. S.D.N.Y. 2011); *see also Frushour*, 433 F.3d at 400 ("We do not decide whether [the debtor] has satisfied the first part of the *Brunner* test, because we hold that she has failed to prove the second and third factors.").

Similar to *Frushour,* the Debtor in this case has failed to satisfy the second and third prongs of the *Brunner* test as a matter of law.[2] Under the second prong of *Brunner*, a debtor must demonstrate additional circumstances exist that show that the current state of affairs is likely to persist for a significant portion of the repayment period. According to *Frushour*, the second prong is at the heart of the *Brunner* test. 433 F.3d at 401. "It is a demanding requirement and necessitates a 'certainty of hopelessness' that a debtor won't be able to repay her student loan obligations." *Eddy v. Educ. Credit Mgmt. Corp. (In re Eddy)*, No. 1:05-bk-02523, Adv. No. 1:05-ap-00210, 2006 WL 2818793, at *3, 2006 Bankr. LEXIS 2545, at *10 (Bankr. N.D.W. Va. Sept. 28, 2006) (quoting *Brightful v. Pa. Higher Educ. Assistance Agency*, 267 F.3d 324, 328 (3rd Cir. 2001)). "Only a debtor with rare circumstances will satisfy this factor. For example, although not exhaustive, a debtor might meet this test if she can show 'illness, disability, a lack of useable job skills, or the existence of a large number of dependents.'" *Frushour*, 433 F.3d at 401 (quoting *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005)).

---

[2] Because the Debtor has not satisfied the second and third prongs of the *Brunner* test, the Court need not address whether she has satisfied the first prong. *See Frushour*, 433 F.3d at 400.

5

The Debtor has not met this exacting standard.  The Debtor is well-educated, holding a master's degree, which increases her income potential.  *See Spence v. Educ. Credit Mgmt. Corp. (In re Spence)*, 541 F.3d 538, 544 (4th Cir. 2008) (holding that *Brunner*'s second prong was not satisfied where the debtor was in a low-paying job but held "a master's degree along with completed Ph.D. course work"); *Eddy*, 2006 WL 2818793, at *4, 2006 Bankr. LEXIS 2545, at *10 (holding that *Brunner*'s second prong was not satisfied where "[t]he Debtor [was] well-educated and ha[d] earned a Bachelor of Arts degree, which serve[d] to increase her employment potential").  The Debtor does not have an exceptionally large number of dependents.  *Cf. Myers v. Fifth Third Bank (In re Myers)*, 280 B.R. 416, 421-24 (Bankr. S.D. Ohio 2002) (finding that the debtor was entitled to an undue hardship discharge on several of her student loans where she had nine children, one of whom had cerebral palsy).  Perhaps most important, the Debtor is only in her early 40s, many years away from retirement.  *See Simms v. USA Funds (In re Simms)*, 328 B.R. 437, 441 (D. Md. 2005) (finding *Brunner*'s second prong was not met where the debtor, who was 44 years old, was "far from retirement age").  And although she suffers from anxiety and post-traumatic stress disorder, there is no indication that this prevents her from working full-time or maintaining employment.  *See Spence*, 541 F.3d at 544 (holding that the bankruptcy court erred in finding that the debtor was entitled to discharge her student loans where the debtor "suffer[ed] from diabetes and high blood pressure, but neither these ailments nor any other age-related health problems affect[ed] her ability to work full-time"); *McClain v. Am. Student Assistance (In re McClain)*, 272 B.R. 42, 45, 48 (Bankr. D.N.H. 2002) (finding that the debtor's depression, which had manifested itself through two suicide attempts, did not satisfy the second element of the *Brunner* test where he had been steadily employed for two years).  It is true that the Debtor has not yet been able to obtain employment in her chosen fields of study.  But she is "not entitled to

6

an undue-hardship discharge by virtue of selecting an education that failed to return economic rewards." *Coveney v. Costep Servicing Agent (In re Coveney)*, 192 B.R. 140, 143 (Bankr. W.D. Tex. 1996). While the Court is not unsympathetic to the Debtor's current circumstances, the undisputed facts point to no "additional circumstances" outside of the normal hardships accompanying bankruptcy that would render her situation hopeless.

The Debtor has also failed to establish *Brunner*'s third prong: whether she has made good-faith efforts to repay her student loans. "*Brunner*'s good faith prong is meant to effect Congressional intent by requiring the repayment of student loans in all but the most extreme cases." *Straub v. Sallie Mae Educ. Credit Mgmt. Corp. (In re Straub)*, 435 B.R. 312, 317 (Bankr. D.S.C. 2010). This factor looks to the debtor's efforts to minimize expenses, maximize income, and obtain employment. *Frushour*, 433 F.3d at 402. Additionally, "the debtor's hardship must be a result of factors over which she had no control." *Id.*

Here, the Debtor has not shown the requisite effort to repay her student loans. As an initial matter, the Debtor's budget reflects discretionary spending that undermines her assertion that she has made a good-faith effort to minimize expenses. For example, the Debtor testified during her deposition that her cell phone bill is approximately $400.00 per month. *See* Mot., Ex. A [dkt. 37-1], at 39:9-18. Additionally, the Debtor's schedules provide for an expense of $125.00 per month for entertainment. *See* Schedule J. These discretionary—and notably high—expenses are not necessary to maintain a minimal standard of living. In *In re Mosko*, the Fourth Circuit rejected comparable spending patterns as evidence of good faith under *Brunner*, reasoning that

> the budget the [debtors] presented to the bankruptcy court does not minimize their expenses. Each month, the [debtors] spend $75 for internet, $80 for cell phones, $60 for satellite television, $68 for a YMCA membership, and an undisclosed amount for cigarettes. Expenditures on such items are generally unnecessary to maintain a minimum standard of living and, under the facts of this case, the failure

7

> to minimize or eliminate these expenditures does not demonstrate a good-faith
> effort to minimize expenses.

515 F.3d 319, 325 (4th Cir. 2008).  Other courts are in accord.  *See, e.g.*, *Educ. Credit Mgmt. Corp. v. Buchanan*, 276 B.R. 744, 751-52 (N.D.W. Va. 2002) (finding that foregoing satellite television and internet service does not constitute an undue hardship); *East v. Educ. Credit Mgmt. Corp. (In re East)*, 270 B.R. 485, 494 (Bankr. E.D. Cal. 2001) (observing that basic cable television was not necessary to maintain a minimal standard of living); *Wardlow v. Great Lakes Higher Educ. Corp. (In re Wardlow)*, 167 B.R. 148, 151 (Bankr. W.D. Mo. 1993) (finding that the debtors were maintaining more than a minimal standard of living where their budget included expenses for cable television, recreation, and miscellaneous expenses).  Here, too, the Debtor's failure to minimize cell phone and entertainment expenses does not demonstrate a good-faith effort to repay her student loans.

It is also undisputed that the Debtor has failed to make a single payment on her student loans.  While what is considered a good-faith effort varies among courts, "courts are generally reluctant to find good faith where a debtor made minimal or no payments on his or her student loans." *Wright v. RBS Citizens Bank (In re Wright)*, No. 12-05206-TOM-7, Adv. No. 13-00025-TOM, 2014 WL 1330276, at *6, 2014 Bankr. LEXIS 1266, at *20 (Bankr. N.D. Ala. Apr. 2, 2014); *see also Murphy v. Sallie Mae (In re Murphy)*, 305 B.R. 780, 801 (Bankr. E.D. Va. 2004) (finding a lack of good faith where the debtor made no payments on her student loans); *Kapinos v. Graduate Loan Ctr. (In re Kapinos)*, 253 B.R. 709, 714 (Bankr. W.D. Va. 2000) ("[T]here is no basis to find that the Debtor has carried the third prong of the *Brunner* standard . . . when she has affirmatively established that she made no efforts to make any payments upon [her student loans] before seeking their discharge.").  That is particularly true where, as here, the student loans "are the bulk of the debtor's debt or when student debt is the first or second largest single type of debt."

*Lohr v. Sallie Mae (In re Lohr)*, 252 B.R. 84, 89 (Bankr. E.D. Va. 2000); *see also Ledbetter v. U.S. Dep't of Educ. (In re Ledbetter)*, 254 B.R. 714, 716 (Bankr. S.D. Ohio 2000) (noting that bankruptcy courts often find "a lack of good faith where the debtor makes nominal payments on a student loan that represents the majority of the scheduled debt in the bankruptcy case").

The Debtor has not made a single payment on her student loans in the nearly six years that have passed since completing her education. Instead, she has obtained continuous deferments. The Fourth Circuit has held that this alone is insufficient to demonstrate good faith. *See Mosko*, 515 F.3d at 326-27 ("The [debtors] argue that their request of deferments and forebearances [sic] on their student loans demonstrates good faith . . . However, without reasonable efforts to make subsequent payments, requesting deferments and forebearances [sic] alone does not establish good faith."); *Spence*, 541 F.3d at 545 ("Obtaining the deferment of student loans is not sufficient to demonstrate a good faith effort to repay them when the deferment is followed by not one payment or any effort to work out a reasonable payment schedule."); *see also Murphy*, 305 B.R. at 801 ("[The debtor] solely has negotiated forbearances and deferments of these student loans; no serious, good faith effort to pay any amounts at any time since the inception of these loans has occurred."); *Daugherty v. First Tenn. Bank (In re Daugherty)*, 175 B.R. 953, 960 (Bankr. E.D. Tenn. 1994) (finding that the debtor's failure to make any efforts to repay student loans after obtaining deferments spanning six years evidenced bad faith). Nor is this a case where the Debtor filed bankruptcy as a last resort after a sincere but unsuccessful effort to pay her student loans. *Cf. Lohr*, 252 B.R. at 89 (finding good faith where "the debtor made payments when she was financially able, tried to negotiate deferments and forbearance in lieu of bankruptcy when she was not and filed bankruptcy only as a last resort"). To the contrary, the Debtor has always been successful in obtaining a deferment of her student loans. Finally, even if,

9

as the Debtor asserts, she has applied for an income-driven repayment plan or a loan forgiveness program, that does not outweigh the other factors in this case—specifically, that the student loans constitute the bulk of her total debt, her failure to minimize expenses, and her failure to make a single payment on the loans. While each of these factors, standing alone, may not always indicate bad faith, the totality of the undisputed facts in this case fails to demonstrate that the Debtor made a good-faith effort to repay her student loans.

### CONCLUSION

"Congress enacted the federal student loan program to provide higher education, but not for free." *Straub*, 435 B.R. at 315. The Bankruptcy Code therefore requires repayment of student loan debt except in the most extreme of cases. This case does not meet that rigorous standard. Considering the undisputed material facts, the Debtor has not satisfied the second and third prongs of the *Brunner* test as a matter of law. As a result, she has not proven that she is entitled to a discharge of her student loans. Accordingly, it is hereby

**ORDERED** that the Motion is **GRANTED**; it is further

**ORDERED** that the Debtor's complaint is **DISMISSED with prejudice as to DOE**; and it is further

**ORDERED** that this adversary proceeding be **DISMISSED with prejudice as to DOE** and removed from the Court's active docket following entry of an order resolving the Debtor's causes of action against MOHELA.

**It is so ORDERED.**

10